UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NANCY E.,[1] | ) |
|                 Plaintiff, | ) No. 22 CV 4965 |
| v. | ) Magistrate Judge Young B. Kim |
| KILOLO KIJAKAZI, Commissioner of Social Security, | ) |
|                 Defendant. | ) December 1, 2023 |

**MEMORANDUM OPINION and ORDER**

Nancy E. seeks disability insurance benefits ("DIB") asserting that she is disabled by MS, optic neuritis, and anxiety. She brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying her DIB application. Before the court are the parties' cross motions for summary judgment. For the following reasons, Nancy's motion is granted, and the government's is denied:

**Procedural History**

Nancy filed a DIB application in September 2019, alleging a disability onset date of September 7, 2018, (Administrative Record ("A.R.") 217), which she later changed to September 14, 2018, (id. at 250). After her application was denied initially and upon reconsideration at the administrative level, (id. at 14, 130), Nancy sought and was granted a telephonic hearing before an ALJ, (id. at 14, 138-39). Nancy

---

[1] Pursuant to Internal Operating Procedure 22, the court uses Nancy's first name and last initial in this opinion to protect her privacy to the extent possible.

appeared at the September 2021 hearing, and she and a vocational expert ("VE") testified. (Id. at 29-52.) In December 2021 the presiding administrative law judge ("ALJ") assigned Nancy a light work residual functional capacity ("RFC") with additional limitations and concluded that Nancy was not disabled. (Id. at 13-23.) The Appeals Council denied Nancy's request for review, making the ALJ's decision the final decision of the Commissioner. (Id. at 1-6); *Jozefyk v. Berryhill*, 923 F.3d 492, 496 (7th Cir. 2019). Nancy then sought judicial review, and the parties consented to this court's jurisdiction. *See* 28 U.S.C. § 636(c); (R. 7).

## The ALJ's Decision

The ALJ engaged in the standard five-step evaluation process when considering Nancy's DIB claim. *See* 20 C.F.R § 404.1520(a). At step one the ALJ found that Nancy did not engage in substantial gainful activity between her alleged onset date in September 2018 and her date last insured in September 2020. (A.R. 17.) The ALJ determined at step two that during the applicable period Nancy suffered from severe impairments of MS and optic neuritis, but that her cervical dysplasia, hypotension, and unspecified anxiety disorder were not severe. (Id.) At step three the ALJ found that Nancy's impairments—whether considered alone or in combination— were not of listings-level severity. (Id. at 18-19.)

Before turning to step four, the ALJ assessed Nancy as having an RFC to perform light work and for: frequent balancing, stooping, kneeling, crouching, and crawling; occasional climbing of ramps and stairs but never ladders, ropes, or scaffolds; and occasional exposure to extreme cold and heat and hazards such as

moving machinery or unprotected heights. (Id. at 19.) At step four the ALJ found that Nancy could perform her past relevant work as a benefits manager and secretary. (Id. at 22-23.) Accordingly, the ALJ concluded that Nancy is not disabled. (Id. at 23.)

## Analysis

Nancy argues that the ALJ failed to: (1) properly evaluate her symptom statements; (2) properly evaluate her treating neurologist's opinions; and (3) incorporate visual and mental limitations in her RFC and in hypotheticals presented to the VE during the hearing. (R. 18, Pl.'s Mem.) When reviewing the ALJ's decision, the court asks only whether the ALJ applied the correct legal standards and substantial evidence supports the decision, *Burmester v. Berryhill,* 920 F.3d 507, 510 (7th Cir. 2019), which is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Biestek v. Berryhill,* 139 S. Ct. 1148, 1154 (2019) (quotation and citations omitted). This deferential standard precludes the court from reweighing the evidence or substituting its judgment for the ALJ's, allowing reversal "only if the record compels" it. *Deborah M. v. Saul,* 994 F.3d 785, 788 (7th Cir. 2021) (quotation and citation omitted). Nevertheless, the ALJ must "provide a 'logical bridge' between the evidence and his conclusions," *Butler v. Kijakazi,* 4 F.4th 498, 501 (7th Cir. 2021), supplying enough detail to "enable a review of whether the ALJ considered the totality of a claimant's limitations," *Lotheridge v. Saul,* 984 F.3d 1227, 1233 (7th Cir. 2021). Having considered the parties' arguments and the record under

these standards, the court concludes that the ALJ failed to account for Nancy's visual and exertional limitations in her RFC and that remand is warranted.

## A.  Subjective Symptom Assessment

Nancy argues that the ALJ erred when assessing her subjective symptoms. (R. 18, Pl.'s Mem. at 1.) To determine the "intensity and persistence of [the claimant's] symptoms," SSR 16-3p, at *2, an ALJ may consider: (1) objective medical evidence; (2) daily activities; (3) frequency and intensity of pain or other symptoms; (4) medication, treatment, and other measures to relieve pain or other symptoms; and (5) functional limitations. *See* SSR 16-3p, 2017 WL 5180304, at *7-8 (Oct. 25, 2017); 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). Generally, an ALJ's symptom evaluation will not be disturbed if it is based on specific findings and evidence and is not "patently wrong." *Murphy v. Colvin*, 759 F.3d 811, 815-16 (7th Cir. 2014).

When assessing Nancy's subjective symptoms, the ALJ considered Nancy's testimony about how her MS, optic neuritis, and anxiety affect her ability to see, lift, squat, stand, walk, and climb stairs, including that they limit her to walking a short distance before needing to rest and needing to sit because standing makes her weak. (A.R. 19.) The ALJ also took into account Nancy's daily activities, such as walking her dog daily, preparing simple meals, shopping in stores, and doing laundry. (Id.) Among other evidence, the ALJ compared Nancy's daily activities to the objective medical evidence showing that: (1) her doctors advised her to exercise and stay active, (id. at 406, 479, 495); (2) neurologist Dr. Christopher Fahey reported that heaviness in her legs improved, (id. at 20 (citing id. at 364)); and (3) she had moderate difficulty

walking on heels but was able to walk 50 feet unassisted, (id. at 21). The ALJ concluded that the evidence supports some limitations, but that Nancy's testimony did not support greater restrictions than assessed in the RFC because it was inconsistent with the overall record, including objective medical evidence, treatment, the state agency reviewing physicians' opinions, and her daily activities. (Id. at 19, 22.)

Nancy first complains that the ALJ did not explain how her mundane daily activities are consistent with the light work RFC assessment. (R. 18, Pl.'s Mem. at 1.) Before an ALJ can hold daily activities against a claimant, the ALJ must explain the inconsistencies between her activities and symptom allegations. *See Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001) (holding that ALJ must "explain the 'inconsistencies' between [a claimant's] activities of daily living . . . complaints of pain, and the medical evidence"). Here, the ALJ explained how Nancy's daily activities affected the symptom analysis. For example, the ALJ acknowledged Nancy's testimony about being able to walk a short distance before needing to rest but noted inconsistencies between those symptom statements and her ability to walk her dog daily, (A.R. 20 (citing id. at 471)), Nancy's own report to her neurologist, Dr. Joseph Mayer, that her gait was generally stable, (id. at 21 (citing id. at 490)), Dr. Mayer's report that her gait was mildly wide but generally stable, (id. at 21 (citing id. at 491)), and other providers' recommendations that she should stay active and exercise, (id.

5

at 19 (citing id. at 492)).[2] Because the ALJ "consider[ed] daily activities" in "determining the extent to which [Nancy's] symptoms limit" her RFC, as she was required to do, *Hightshoe v. Kijakazi*, No. 22 CV 2359, 2023 WL 3531473, at *2 (7th Cir. May 18, 2023) (internal quotations omitted) (citing 20 C.F.R. § 404.1529(c)(3)(i)), and did not equate Nancy's daily activities with her ability to work in a competitive environment, the court finds no error—patent or otherwise—in this analysis, *see Prill v. Kijakazi*, 23 F.4th 738, 748 (7th Cir. 2022) ("[I]t is entirely permissible to examine all of the evidence, including a claimant's activities, to assess whether testimony about the effects of . . . impairments was credible or exaggerated." (citation omitted)).

Nancy further argues that the ALJ discounted her symptom statements based on "conservative" treatment without adequately considering her lack of insurance or the likelihood that her condition would not have improved even with more aggressive treatment. (R. 18, Pl.'s Mem. at 1.) But the ALJ expressly noted that Nancy could not afford mental health treatment and did not have insurance. (A.R. 19-21.) With respect to the ALJ's characterization of her treatment as conservative, such language is troubling because there is no expert opinion indicating other available or more aggressive treatment, and Nancy did not refuse more aggressive treatment. *See McCulley v. Berryhill,* No. 13 CV 6031, 2019 WL 1292982, at *7 (N.D. Ill. March 20, 2019) (quotation omitted)). That said, any error here is harmless because the ALJ explained why she concluded that Nancy's treatment was conservative. *See Lyn P. v.*

---

[2] Nancy relies on *Carradine v. Barnhart,* 360 F.3d 751, 753-56 (7th Cir. 2004), to suggest that the ALJ improperly used a doctor's recommendation to "stay active" to discredit her subjective complaints, but that case was reversed on other grounds. *Id.*

*Saul*, No. 19 CV 1596, 2021 WL 2823089, at *12 (N.D. Ill. July 7, 2021). For example, the ALJ cited records showing that medication was prescribed, and symptoms either improved or were clinically silent. (A.R. 20-21 (noting Nancy "was placed on steroids and her vision improved," "Avonex resulted in clinical silence of the MS," "MS was generally stable though she became tired fairly easily," and "[o]verall, [Nancy] . . . was noted to be generally stable"). As such, the ALJ did not err in accounting for the effects of Nancy's medication and treatment.

In any event, the ALJ did not rely solely on Nancy's daily activities and conservative treatment but also pointed to objective medical evidence and opinion evidence to identify inconsistencies between Nancy's symptom allegations regarding her reported ability to lift weight, sit, stand, and walk and medical sources' observations showing fewer restrictions were warranted. (See id. at 20-21.) As such, the totality of the ALJ's symptom assessment was not "patently wrong." *Murphy*, 759 F.3d at 815-16.

**B.    Opinion Evidence**

Nancy next argues that the ALJ ignored supporting evidence when finding Dr. Mayer's opinion unpersuasive. (R. 23, Pl.'s Reply at 4.) Nancy applied for disability benefits after March 27, 2017, so the new regulations for considering medical opinions apply here. (A.R. 22.) Under the new regulations, the ALJ may not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the ALJ must determine the persuasiveness of all medical opinions in the record by considering and

7

explaining the most important factors—supportability and consistency. *Id.* §§ 404.1520c, 416.920c(b)(2); *see also Albert v. Kijakazi*, 34 F.4th 611, 614 (7th Cir. 2022). The supportability factor requires consideration of the objective medical evidence and explanations presented and used by a medical source. 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). The consistency factor requires the ALJ to consider and explain how the medical opinion is consistent with all other sources (medical and nonmedical). *Id.* §§ 404.1520c(c)(2), 416.920c(c)(2). Only after considering these factors, the ALJ may, but is not required to, explain how she considered the other three factors—relationship with the claimant, specialization, and other factors that tend to support or contradict a medical finding. *Id.* §§ 404.1520c, 416.920c(b)(2).

Dr. Mayer's April 2021 checkbox form states that, among other things, Nancy could never lift any weight, could sit, stand, and walk for less than two hours in an eight-hour workday, and would miss more than four workdays per month. (A.R. 22, 391-94.) In finding this opinion unpersuasive, the ALJ reasoned that it was "not supported by the overall record" because Dr. Mayer's prior medical notes characterized her MS as "stable" and her overall disease burden as "mild." (Id. at 22.) Considering the consistency, or lack thereof, between Dr. Mayer's opinion and his own treatment notes was proper. 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1) (requiring consideration of objective medical evidence and supporting explanations presented and used by a medical source to determine supportability); *see also Elaina M. v. Kijakazi*, No. 22 CV 6279, 2023 WL 4707557, at *5-6 (N.D. Ill. July, 24 2023) (finding that ALJ did not err when relying on evidence suggesting physician's own

8

treatment notes do not paint nearly as dire a picture of claimant as his opinion). The ALJ also properly considered that Dr. Mayer had treated the claimant just twice before completing the checkbox form.[3]

But Nancy complains that the ALJ impermissibly cherry-picked evidence showing that Nancy's MS was "stable" while ignoring other evidence suggesting she is disabled. (R. 18, Pl.'s Mem. at 8; R. 23 Pl.'s Reply at 4); *see also Martin v. Saul*, 950 F.3d 369, 375 (7th Cir. 2020) (holding that an ALJ may not engage in "impermissible cherry-picking" by "highlighting facts that support a finding of non-disability while ignoring evidence to the contrary"). Nancy complains that simply because a condition is characterized as "stable" or "improving" does not necessarily mean that she is capable of doing light work. (R. 18, Pl.'s Mem. at 10); *see also Murphy v. Colvin*, 759 F.3d 811, 819 (7th Cir. 2014). However, the ALJ does not reach such a terse conclusion here. Instead, the ALJ considered and explained Dr. Mayer's conflicting treatment notes, which revealed clinical findings of mild symptoms, and cited other physicians' characterizations of "mild" and "normal" clinical findings. (A.R. 20-22); *see Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021) ("We will 'reverse only if the record compels a contrary result.'"). She also discussed the August 2019,

---

[3] The ALJ states that "Dr. Mayer started treating the claimant in August 2019, but his notes indicate that he had seen the claimant one other time before [March 2021]." (A.R. 22.) The ALJ's statement is misleading because Dr. Fahey treated Nancy in April 2019 and Dr. Mayer examined Nancy on two separate occasions: September 2020 and March 2021. (Id. at 494.) But this error is harmless because the ALJ's overarching point that Dr. Mayer had only treated Nancy twice before issuing his opinion is accurate.

9

September 2020, and March 2021 neurology exams, which showed the following: no joint complaints and normal strength in upper or lower extremities; no prenatal drift; symmetrically brisk reflexes; no significant tremor; normal finger-nose-finger; normal rapid alternating movements; normal light touch throughout; normal muscle strength in all four extremities; appropriate muscle tone; normal rapid alternating finger movements bilaterally; intact sensation in upper extremities; intact sensation in upper extremities; generally stable gait; and overall disease burden appeared mild. (A.R. 20-21, 495, 502-03, 509.)

Moreover, while Nancy contends that the ALJ ignored the reasoning that Dr. Mayer offered in his opinion and failed to consider treatment notes reflecting "lower extremity diminished sensation, gait abnormalities, unsteadiness, abnormal Romberg testing and brain white matter changes," (R. 18, Pl.'s Mem. at 8), the ALJ in fact mentioned many of these clinical findings. In particular, the ALJ referred to Dr. Mayer's notes of:

> "intact sensation in upper extremities but there was moderately diminished proprioception in the right first toe and mildly diminished proprioception in the left toe. Gait was noted as mildly wide-based and slow with a tendency to favor the right leg [and she] had some balance difficulty when tired. . . . [G]ait was mildly wide based [and] she had diminished proprioception, as well as diminished light touch in the lower extremities.

(A.R. 21.) Although the ALJ does not mention "changes in the white matter consistent with MS," (id. at 505), or that Nancy tended to sway on Romberg testing, (id.), the ALJ need not cite every piece of evidence, *Gorza v. Kijakazi,* 2022 WL 378663, at *2 (7th Cir. Feb. 8, 2022) ("[T]he ALJ does not err when [s]he does not

10

discuss every piece of evidence in explaining [her] determination."). Nancy argues that the ALJ ignored evidence, but the ALJ mentions elsewhere in the opinion records showing an abnormal gait, moderate difficulty walking, mild difficulty squatting, poor balance, normal grip strength, and decreased pain and touch sensation in both lower extremities. (Id. at 20-21.) As such, the court finds no evidence of improper cherry-picking.

## C. RFC Assessment

Finally, Nancy argues that the ALJ failed to: (1) account for visual limitations when determining the RFC and presenting hypotheticals to the VE despite the state agency reviewing physicians' findings that Nancy's MS and optic neuritis limited her near and far visual acuity; and (2) incorporate Nancy's mental limitations relating to fatigue and anxiety in the RFC and hypotheticals. (R. 18, Pl.'s Mem. at 1.) An RFC measures the tasks a person can perform given limitations based on "all the relevant evidence" in the administrative record. 20 C.F.R. § 404.15145(a)(1); *see also Pepper v. Colvin,* 712 F.3d 351, 362 (7th Cir. 2013). The ALJ must consider all of the claimant's impairments, including those that are not severe. 20 C.F.R. §§ 404.1520(e) and 404.1545; SSR 96-8p. When assessing a claimant's RFC, the ALJ "must give weight to the medical evidence and opinions submitted, unless specific, legitimate reasons constituting good cause are shown for rejecting it." *Chambers v. Saul,* 861 Fed. Appx. 95, 101 (7th Cir. 2021) (quoting *Knight v. Chater,* 55 F.3d 309, 313 (7th Cir. 1995)). Where ALJs do not rely upon medical opinions, they must "thoroughly discuss[] the medical and other evidence carefully," "consider[] each of [the

11

claimant's] impairments and related function deficits," and explicitly "describ[e] how the evidence supports each [RFC] conclusion." *Norris v. Astrue,* 776 F. Supp. 2d 616, 637 (N.D. Ill. 2011) (citing SSR 96-8p); *see also Nina Joyce H. v. Saul,* No. 18 CV 4913, 2020 WL 21277, at *7 (N.D. Ill. Jan. 14, 2020). An ALJ's RFC assessment will not be overturned where "[t]he ALJ thoroughly discussed the medical and other evidence and carefully considered each of [the claimant's] impairments and related function deficits" before assigning an RFC. *Summers v. Berryhill,* 864 F.3d 523, 527 (7th Cir. 2017).

In formulating Nancy's RFC for light work with limitations, none of which is vision-specific, the ALJ considered Nancy's hearing testimony that she left her job because she was having problems with her vision, which caused her to make mistakes, (A.R. 19), and that she experienced difficulties with her vision starting at age 16 and received a diagnosis of optic neuritis at age 30, (id. at 20). The ALJ also considered the objective medical evidence, including her history of fluctuating vision problems that improved with medication, and treatment records showing that in 2005 her right eye worsened causing blurriness but then improved. (Id.) The ALJ mentioned that a state agency consulting examiner ("CE") evaluated Nancy in January 2020 and found 20/200 uncorrected vision in her right eye and 20/70 in the left and assessed optic atrophy in both eyes secondary to MS. (Id. at 21.) The ALJ acknowledged the CE's findings of some vision loss, but noted Nancy's report to the ophthalmologist that she does not wear glasses to drive. (Id.) In terms of opinion evidence, the ALJ found persuasive the state agency reviewing physicians' opinions

12

that Nancy could perform light work with limited near and far acuity. (Id. at 22.) Finally, the ALJ considered that Nancy's minimal and conservative treatment for her vision difficulties was because of insurance issues and COVID-19. (Id.)

Nancy's first complaint is that when developing her RFC, the ALJ failed to incorporate visual limitations documented by the state agency reviewing physicians, despite finding their opinions persuasive. (R. 18, Pl.'s Mem. at 1, 6-8; R. 23, Pl.'s Reply at 1-2.) The court agrees that the ALJ erred in this regard. *See Grazyna C. v. Kijakazi,* No. 21 CV 50030, 2022 WL 2802336, at *5-12 (N.D. Ill. July 18, 2022) (reversing where ALJ included some state agency physicians' opined limitations but excluded others without explanation). Although the ALJ acknowledged some of the state agency reviewing physicians' findings limiting near and far acuity, (A.R. 22), she did not include any visual limitations in the RFC. Nor did she "provide a 'logical bridge' between the evidence and [her] conclusions," *Butler,* 4 F.4th at 501, explaining why such limitations were not warranted.

While the ALJ acknowledged the state agency reviewing physicians' conclusions that Nancy had limited near and far acuity, she ignored their determination that Nancy "may have difficulty discriminating details of objects at a distance" when failing to include relevant limitations for such difficulty. (A.R. 118-19.) Furthermore, while the state agency reviewing physicians opined that Nancy should avoid unprotected extreme heights and uncovered hazardous machinery as a result of her monocular vision, (Id. at 119), the ALJ permitted Nancy to engage in "occasional" work around unprotected heights and moving machinery, (id. at 19),

without explaining the disconnect between this RFC and the state agency reviewing physicians' opinions. Nor did the ALJ explain how Nancy could sustain full-time, competitive work given her visual impairments. While the ALJ is not required to evaluate every piece of evidence, she must articulate her reasons for rejecting limitations by sources she deemed "persuasive" and explain how the evidence supports the RFC determination. *Rice v. Barnhart,* 384 F.3d 363, 371 (7th Cir. 2004). Here, the ALJ did not do so.

Instead, the ALJ appears to have relied heavily on Nancy's testimony that she did not wear glasses to drive, which the ALJ mentioned twice in her decision. (A.R. 21.) Yet in doing so, the ALJ incorrectly cited the ophthalmologist's report as stating that Nancy "reported she did not need glasses when driving," (id.), when the report actually states, "[s]he does not wear glasses or drive," (id. at 382). Although the state agency reviewing physicians determined that Nancy could still perform her past work, despite evidence of visual limitations of near and far acuity, (id. at 121, 129, 137), the court cannot say with great certainty that the ALJ's error was harmless because she did not account for these limitations in the RFC or in hypotheticals presented to the VE during the hearing.

The government tries to fill the gap by offering its own explanation on how the ALJ's RFC accounts for the state agency reviewing physicians' opinions on visual and environmental limitations. (R. 22, Govt.'s Mem. at 7). Yet as discussed, the ALJ offered no explanation as to how her RFC sufficiently accounts for visual limitations assessed by the state agency reviewing physicians. And, as Nancy correctly notes,

14

the *Chenery* doctrine forbids the government from providing a rationale not set forth in the ALJ's opinion. *See Parker v. Astrue,* 597 F.3d 920 (7th Cir. 2010) (citing *SEC v. Chenery Corp.,* 318 U.S. 80, 87-88 (1943)). Where, as here, the ALJ failed to account for visual limitations recommended by state agency reviewing physicians whose opinions she deemed persuasive, remand is warranted. (A.R. 100-02); *see DeCamp v. Berryhill,* 916 F.3d 671, 676 (7th Cir. 2019) (finding that ALJ must adequately account for limitations identified in state agency consultant's narrative explanations and check-box forms); *Anna-Marie L. v. Kijakazi,* No. 21 CV 50354, 2022 WL 4610120, at *4-5 (N.D. Ill. Sept. 30, 2022) (requiring ALJ to explain reasoning for overlooking limitation set out by state agency physician whose opinion the ALJ found persuasive).

The court has similar concerns about whether the ALJ sufficiently supported the limitation that Nancy could occasionally work around extreme heat in light of the state agency reviewing physicians' opinions that Nancy "must avoid even moderate exposure to heat to decrease risk for fatal MS-related response to same." (A.R. 116-19.) On remand, the ALJ also should revisit this aspect of the RFC, even if only to explain why she substituted a lesser limitation—"occasional" exposure to extreme heat—than ascribed by the state agency reviewing physicians.

Nancy next argues that the RFC and hypotheticals discussed with the VE did not account for her mental limitations associated with fatigue and anxiety. (R. 18, Pl.'s Mem. at 1.) The court does not have the same concerns with the ALJ's assessment of Nancy's mental RFC as it does with her physical RFC. At step two, the ALJ discussed Nancy's treatment records showing only a past history and

15

intermittent complaints of anxiety, along with prescriptions for anxiety. (A.R. 17.) The ALJ noted that Nancy did not receive any formal mental health treatment and pointed to inconsistencies in reporting her anxiety during medical exams. (Id.) The ALJ further addressed at length Nancy's psychological consultative exam and the CE's finding of unspecified anxiety disorder. (Id.) She also considered and detailed "the broad functioning areas of mental functioning[.]" (Id.) In the end, the ALJ concluded that Nancy's "unspecified anxiety disorder did not cause more than minimal limitation in [her] ability to perform basic mental work activities and therefore [was] non severe." (Id.)

The ALJ then considered Nancy's testimony about her anxiety, tiredness, and fatigue, as well as a third-party function report discussing Nancy's anxiety. (Id. at 19.) Furthermore, the ALJ evaluated medical opinion evidence and deemed the state agency reviewing physicians' opinions persuasive because they were "internally consistent and well supported by a reasonable explanation." (Id. at 22.) Although the ALJ did not mention that the state agency reviewing physicians determined Nancy's mental impairments, including fatigue, were nonsevere, (id. at 113-14), the ALJ did not ignore any opined mental limitations because the reviewing physicians supplied none. Thus, the ALJ did not err when determining that Nancy's RFC did not necessitate mental restrictions. *Robert S. v. Kijakazi,* No. 20 CV 6286, 2022 WL 45036, at *6 (N.D. Ill. Jan. 5, 2022) ("[T]he ALJ's findings simply followed the finding of the state agency psychologist. . . . The opinion of a reviewing psychologist constitutes substantial evidence.").

Nancy nonetheless contends that the ALJ's finding of non-severe anxiety conflicts with a prior SSA decision finding her anxiety qualified as a severe impairment. (R. 18, Pl.'s Mem. at 13.) Although Nancy is correct on this point, (A.R. 17, 86), the decision subject to review here relates to the time period beginning the day after the prior SSA decision, (id. at 14, 250), and the previous decision is not entitled to any degree of deference, *Vasquez v. Astrue*, 572 F.3d 586, 598 (9th Cir. 2009). Regardless, the doctrine of administrative *res judicata* does not apply because the subject decision was not determined based on the same set of facts as the previous decision. *Torres v. Commissioner of Soc. Sec.*, 819 Fed. Appx. 886, 888 (11th Cir. 2020) (explaining that administrative *res judicata* applies only when "an agency has 'made a previous determination or decision . . . about [a claimant's] rights on the same facts and on the same issue or issues'"); *see also Rucker v. Chater*, 92 F.3d 492, 495 (7th Cir. 1996) ("The first ALJ's finding . . . has no effect . . . on an application for disability benefits for a subsequent time period."). As such, a remand is not warranted on this basis.

## Conclusion

For the foregoing reasons, Nancy's motion for summary judgment is granted, the government's is denied, and this matter is remanded for further proceedings consistent with this opinion.

ENTER:

_____
Young B. Kim
United States Magistrate Judge